UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| KENNETH J. COLE, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-602-HBG |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 15]. Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 16 & 17] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 20 & 21]. Kenneth J. Cole ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I. PROCEDURAL HISTORY

On May 29, 2013, Plaintiff filed an application for disability insurance benefits and supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401-403, 1381-1385, claiming a period of disability that began on May 14, 2009, but

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

later amended to June 14, 2012. [Tr. 20, 205-12]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 125]. A hearing was held on June 2, 2015, followed by a supplemental hearing on September 29, 2015. [Tr. 37-64]. On October 28, 2015, the ALJ found that Plaintiff was not disabled. [Tr. 20-31]. The Appeals Council denied Plaintiff's request for review [Tr. 1-3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on October 12, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since June 14, 2012, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: Asperger's Syndrome, major depressive disorder, anxiety disorder, and s/p remote head injury (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to performing simple

and repetitive nondetailed tasks where coworker contact would be no more casual and superficial contact (occasional) where public contact should be minimal to nonexistent (less than occasional); supervision should be direct and nonconfrontational (no special supervision); changes in the workplace would need to be no more than infrequent and should be gradually introduced; unable to meet fast paced high product demands; and would work better with things than people.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 14, 1984 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 14, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 23-31].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and

whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137,

146 (1987)).

## V. ANALYSIS

On appeal, Plaintiff argues that his RFC is not supported by substantial evidence because the ALJ failed to properly consider the medical records and opinion letters by Plaintiff's treating psychologist, D. Chad Hunter, Psy.D. [Doc. 14 at 14-18]. Plaintiff submits that the ALJ did not give "good reasons" for the weight assigned to Dr. Hunter's opinion evidence and erred in deferring to the medical opinion of Nathan Strahl, M.D., Ph.D., a nontreating, nonexamining medical expert. [*Id.*]. Plaintiff additionally complains that the ALJ erred in denying his request to subpoena Dr. Hunter to the September 29, 2015 supplemental hearing. [*Id.* at 18-21]. For the reasons stated below, the Court finds that substantial evidence supports the ALJ's decision.

Plaintiff attended therapy with Dr. Hunter between January 2013 and August 2015 at Cherokee Health Systems with the goal of managing his anger, anxiety, and depression, building social skills and relationships, and improving his insight into general life skills. [Tr. 329-33]. Based on Plaintiff's presentation, report, and records, Dr. Hunter diagnosed Plaintiff with Asperger's syndrome, depression, not otherwise specified, and anxiety disorder, not otherwise specified. [Tr. 253, 322]. In addition to treatment notes, the record also includes four letters by Dr. Hunter, wherein Dr. Hunter verified Plaintiff's therapy attendance, his diagnoses of Asperger's syndrome, depression, and anxiety, and a then-current summarization of Plaintiff's symptoms. [Tr. 253, 365-66, 441].

In his first letter, dated July 2, 2013, Dr. Hunter noted that Plaintiff consistently reported symptoms including: poor communication, understanding of others, and coping skills; feeling removed or different than others; lack of appropriate peer relationships and social reciprocity; preoccupation with restricted patterns of interest; rigid adherence to rituals, routines, or

6

expectations; a desire for order in life; overwhelmed by excessive stimuli; self-injury when overwhelmed (punching self); anhedonia; avolition; sad affect; social isolation; racing and ruminative thoughts; difficulty calming down; and muscle tension. [Tr. 253]. Dr. Hunter opined that these symptoms inhibited Plaintiff's personal, social, and occupational functioning, preventing him from functioning at a higher level. [*Id.*]. Dr. Hunter wrote a second letter on March 28, 2014, explaining that Plaintiff continued to demonstrate an inability to find or maintain employment, has difficulty functioning in any social setting, and has poor stress management skills. [Tr. 365].

On May 7, 2015, after 39 individual therapy sessions, Dr. Hunter wrote a third letter, relating that Plaintiff had actively and appropriately participated in treatment, and that he demonstrated improvement in insight, coping skills, and behavioral management. [Tr. 366]. Nonetheless, Plaintiff continued to demonstrate and report symptoms meeting the criteria of his diagnoses for Asperger's syndrome, depression, and anxiety. [*Id.*].

Finally, Dr. Hunter wrote a fourth letter on June 26, 2015, explaining that the policy of his employer, Cherokee Health Systems, prevented him from completing a functional assessment or evaluative report on behalf of Plaintiff as requested by the Disability Determination Section of the Department of Human Services. [Tr. 441].

The record also contains opinion evidence from Dr. Strahl, a nontreating, nonexamining medical expert. Following Plaintiff's first administrative hearing, the ALJ sent interrogatories to Dr. Strahl in order to obtain additional opinion evidence regarding Plaintiff's impairments and their functional effects. [Tr. 416-422]. Dr. Strahl submitted his responses on July 3, 2015. [Tr. 424-31]. Dr. Strahl opined that Plaintiff has low emotional insight as most of the issues discussed with Dr. Hunter were very basic in nature, i.e., concepts relating to every day issues in life that

most other people would take for granted or would not require mental health intervention. [Tr. 426]. Dr. Strahl also noted that Plaintiff had many discussions with Dr. Hunter related to work issues, but Plaintiff never took the extra and necessary steps to look for or secure employment. [*Id.*].

Dr. Strahl opined that Plaintiff benefited from his therapy sessions with Dr. Hunter. [Tr. 426]. For example, Dr. Strahl cited to Dr. Hunter's second letter from March 2014, wherein Dr. Hunter expressed that Plaintiff continued to demonstrate an inability to find or maintain employment, had difficulty functioning in any social setting, and had poor stress management skills. [Tr. 365, 426]. However, 14 months later, Dr. Hunter's May 2015 letter expressed improvement in Plaintiff's insight, coping skills, and behavioral management. [Tr. 366, 426]. Although Plaintiff continued to meet the diagnostic criteria for Asperger's syndrome, depression, and anxiety, based on the totality of Plaintiff's mental health treatment records, Dr. Strahl concluded that Plaintiff had improved over time, likely as the result of therapy with Dr. Hunter, Plaintiff maturing secondary to age, and Plaintiff's stable living environment. [*Id.*].

In sum, Dr. Strahl opined that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, because Plaintiff only demonstrated mild restrictions in activities of daily living and concentration, focus, and persistence of pace, as well as moderate restrictions in socialization. [*Id.*]. These findings translated into the following functional limitations: (1) Plaintiff could perform simple routine repetitive tasks due to his lower level of intellectual maturity and lack of prior work skills, and (2) based on his Asperger's syndrome, Plaintiff would do best to work mostly independently but can interact adequately with supervisors and can occasionally interact with coworkers and the public. [Tr. 426-27].

8

Following Dr. Strahl's interrogatory responses, a supplemental hearing was held in which Plaintiff requested that Dr. Hunter be subpoenaed to the hearing. [Tr. 300]. Plaintiff explained that Dr. Hunter's testimony was necessary to show the severity of his psychiatric impairments and that Dr. Strahl's opinion was entitled to little or no weight. [*Id.*].

In the disability determination, the ALJ noted that Plaintiff attended regular therapy sessions with Dr. Hunter beginning in January 2013, and treatment notes indicated an increase in depression and anxiety at times. [Tr. 27]. The ALJ also noted instances of improvement, including a March 2013 treatment note in which Plaintiff reported improved depression due to returning to church, going on walks, and doing things with his friends. [Tr. 27, 325]. In addition, an August 2015 treatment note documented moderate progression in Plaintiff's solving skills, positive self-talk, and relaxation skills. [Tr. 27, 447].

With specific regard to Dr. Hunter's letters, the ALJ explained that he has taken into account Plaintiff's two-year treating relationship with Dr. Hunter, as well as the content within each letter, including Dr. Hunter's diagnoses, reported symptoms and difficulties, and Dr. Hunter's inability to conduct or provide a functional assessment or evaluative report for disability purposes. [Tr. 28]. The ALJ concluded that Dr. Hunter's opinions were only entitled to "some weight" as the Plaintiff's daily living activities did not substantiate the severity of his impairments or the limitations alleged. [Tr. 28-29]. Specifically, Plaintiff reported he maintained the ability to live alone, perform personal care needs, perform household chores, drive, go out alone, use public transportation, attend cooking classes, shop in stores or on the computer, manage finances, surf the internet, socialize over the internet, read, play games on the computer, watch movies and television, perform medieval reenactments, and visit with friends. [Tr. 28-29].

The ALJ, instead, gave "great weight" to Dr. Strahl's opinion. [Tr. 29]. Although Dr. Strahl never examined or treated Plaintiff, the ALJ noted that Dr. Strahl specialized in and practiced psychiatry since 1987, and he is familiar with the disability determination process as he has provided expert testimony in social security cases since 1992. [*Id.*]. The ALJ concluded that the limitations assessed by Dr. Strahl were more consistent with Plaintiff's reported daily activities. [*Id.*].

Additionally, the ALJ denied Plaintiff's request to subpoena Dr. Hunter. [Tr. 20]. The ALJ observed that the basis of the subpoena was to obtain testimony in an effort to discredit Dr. Strahl's opinion. [*Id.*]. Because a full record of Dr. Hunter's treatment and letters had been made available, and Dr. Hunter was precluded by his employer from conducting a functional assessment or evaluative report for disability purposes, the ALJ concluded that there was no sufficient basis to issue a subpoena. [*Id.*]. The ALJ found that the evidence could be adequately challenged without the use of a compulsory process, and that a supplemental hearing was held following Dr. Strahl's responses. [*Id.*].

Plaintiff maintains that good reasons were not given for the weight assigned to Dr. Hunter's letters. [Doc. 17 at 15]. Plaintiff does not actually attack the specific reasons cited by the ALJ— that is, Plaintiff's daily living activities and the lack of functional limitations assessed by Dr. Hunter—but, instead, argues that the supportability of Dr. Strahl's opinion is undermined by the evidence. In this regard, Plaintiff maintains that while Dr. Strahl opined that Plaintiff "improved over time," Plaintiff contends that the evidence "does not show that he improved to the extent that he could work." [*Id.* at 15-16]. Plaintiff also takes issue with Dr. Strahl's statement that Plaintiff never took the extra or necessary steps to look for or secure employment. [*Id.*]. Plaintiff explains that while therapy sessions initially focused on vocational rehabilitation and job training, he and

Dr. Hunter later agreed that therapy should focus on identity development to achieve a greater life balance. [*Id.*]. Thus, despite some improvement, Plaintiff maintains that the evidence suggests his symptoms remained disabling as he continued to meet the diagnostic criteria for Asperger's syndrome, depression, and anxiety. [*Id.* at 17].

The Court observes that a treating source opinion generally enjoys controlling weight when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c) and 416.927(c). However, the ultimate decision of disability rests with the ALJ. *Sullenger v. Comm'r of Soc. Sec.*, 255 Fed. App'x 988, 992 (6th Cir. 2007). When an ALJ does not give a treating source opinion controlling weight, the ALJ must always give "good reasons" for the weight assigned, taking into consideration the length of treatment, frequency of examination, the nature and extent of the treatment relationship, the amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6) and 416.927(c)(1)-(6). These factors must also be applied to the opinions of nontreating and nonexamining sources in determining the appropriate weight such opinions deserve. §§ 404.1527(e) and 416.927(e)

The Court finds the specific reasons cited by the ALJ for assigning Dr. Hunter's letters some weight amounts to good reasons. An ALJ may properly discount a treating source opinion where the limitations assessed are inconsistent with the claimant's daily living activities. *See* 20 C.F.R. §§ 404.1527(c)(4) and 416.927(c)(4) ("[T]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *Gerald v. Comm'r of Soc. Sec.*, No. 5:16-CV-266-KKC, 2017 WL 5894533, at *4 (E.D. Ky. Nov. 29, 2017)

11

("Inconsistencies with the treatment record and Gerald's activities were good reasons for discounting the opinion of Dr. Hughes."). By Plaintiff's own account he maintained the ability to live alone, perform personal care needs, perform household chores, drive, go out alone, use public transportation, attend cooking classes, shop in stores or on the computer, manage finances, surf the internet, socialize over the internet, read, play games on the computer, watch movies and television, perform medieval reenactments, and visit with friends. Although Dr. Hunter's July 2, 2013 and May 7, 2015 letters notate poor communication, understanding, and social interaction among other stypoms, Plaintiff's ability to engage in the foregoing activities, which he does not dispute he can perform, suggests his symptoms are not as limiting as he alleged.

Additionally, the ALJ properly recognized the length and frequency of the treating relationship, and that Dr. Hunter noted improvement and did not provide any functional limitations. [Tr. 27-28]. Plaintiff does not articulate any specific functional limitations that could have reasonably be attributed to Dr. Hunter's letters or treatment notes. Plaintiff merely cites to Dr. Hunter's July 2, 2013 and May 7, 2015 letters, wherein a repertoire of symptoms was noted. [Doc. 17 at 16-17]. However, continued therapy sessions demonstrate a subsequent improvement in many of the Plaintiff's earlier reported symptoms, including better insight, coping skills, and behavioral management, as well as moderate progression in problem solving skills, positive self-talk, and relaxation skills. [Tr. 366, 447, 449, 451]. Given Plaintiff's improvement over the course of therapy as well as his daily living activities, the Court finds that the ALJ reasonably assigned some weight to Dr. Hunter's letters where no specific functional limitations were assessed. While Plaintiff may disagree with the ALJ's interpretation of the evidence, the Court does not find that it was an unreasonable one, nor is it grounds for remand. *See Her*, 203 F.3d at 389–90 ("Even if

the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

The ALJ, of course, did not rely on his own lay opinion in weighing the evidence, but also considered the expert testimony of Dr. Strahl.[2] After reviewing the entirety of Dr. Hunter's treatment notes and letters, Dr. Strahl concluded that Plaintiff demonstrated improvement such that he was capable of performing simple routine repetitive tasks and would do best to work with things rather than people, but he could adequately interact with supervisors and can occasionally interact with coworkers and the public. Plaintiff complains that he did not show improvement to the extent that he could work, because he continued to meet the criteria for Asperger's syndrome, depression, and anxiety. But a diagnosis alone says nothing about the severity of a condition. *Higgs v. Brown*, 880 F.2d 860, 863 (6th Cir. 1988). Furthermore, Plaintiff, again, merely offers a different interpretation of the evidence that contrasts with Dr. Strahl's conclusions. The Court does not "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 2011 WL 1228165 at * 2 (6th Cir.2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir.1995)). The ALJ discussed the medical evidence and opinions of record, providing a sufficient and reasoned bases for his assessment of Dr. Hunter's letters and Dr. Strahl's opinion. Substantial evidence supports the ALJ's findings.

---

[2] The Court additionally notes that the ALJ also assigned "some weight" to the opinions of the nontreating, nonexamining state agency physicians who concluded that Plaintiff could perform simple and detailed tasks, make routine (not executive level) decisions, can meet basic social demands in a work setting but cannot work with the general public, and can adapt to gradual or infrequent changes. [Tr. 89, 103].

The Court additionally finds that the ALJ did not act improperly when he denied Plaintiff's request to subpoena Dr. Hunter. Governing regulations express that a subpoena may be issued at the request of a party, or on the ALJ's own accord, for witness testimony "when it is reasonably necessary for the full presentation of a case." 20 C.F.R. §§ 404.1550(d)(1) and 416.950(d)(1). The request must include "the important facts that the witness . . . is expected to prove[] and indicate why these facts could not be proven without issuing a subpoena." §§ 404.950(d)(2) and 416.1450(d)(2). Issuance of a subpoena is not an absolute right in social security cases but is within the sound discretion of the ALJ. *Flatford v. Chater*, 93 F.3d 1296, 1300-01 (6th Cir. 1996).

Here, Plaintiff contends that Dr. Hunter should have been subpoenaed because he did not provide a functional assessment of Plaintiff's abilities. However, as noted by the ALJ, Dr. Hunter's employer prevented him from rendering such information. Plaintiff protests that the ALJ should have nonetheless subpoenaed Dr. Hunter because he stopped working for Cherokee Health Systems the same month of the supplemental hearing, and therefore, he "may not have been precluded from" providing testimony on such matters. [Doc. 17 at 20-21]. Plaintiff did not raise this particular argument before the ALJ when he requested a subpoena. [Tr. 300]. Even so, Plaintiff has presented no evidence that Dr. Hunter was no longer precluded from providing a functional assessment, particularly where the assessment would have been based on information learned during therapy sessions at Cherokee Health Systems. Furthermore, a subpoena should only be issued "[w]hen all other means of obtaining the information or testimony have been exhausted." *Hearing, Appeals, and Litigation Law Manual* I-2-5-78, 1992 WL 601841 (May 1, 2017). Plaintiff has not met his burden in this regard, as there is no evidence that Plaintiff or his counsel contacted Dr. Hunter to request a functional assessment or testimony without the use of a compulsory process. Therefore, the Court finds no error by the ALJ.

## VI. CONCLUSION

Based on the foregoing, the Court finds that good reason was given for the weight assigned to Dr. Hunter's letters, and substantial evidence supports the ALJ's reliance on Dr. Strahl's opinion and his decision to deny Plaintiff's request for a subpoena. Accordingly, Plaintiff's Motion for Summary Judgment [**Doc. 16**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 20**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge